UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GERARDO LACOURT,

               Plaintiff,

v.

**DECISION AND ORDER**
14-CV-183S

MS. LAVELL C. JONES,
   *Transplant Coordinator, Upstate Med. Univ.,*
MARSHALL TRABOUT, M.D.,
   *Medical Doctor, Elmira Correctional Facility*,

               Defendants.

## I. INTRODUCTION

In this action, pro se Plaintiff Gerardo Lacourt alleges, pursuant to 42 U.S.C. § 1983, that Defendants Lavell Jones and Marshall Trabout violated his Eighth Amendment rights while he was an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). In particular, he asserts that Defendants were deliberately indifferent to his serious medical condition by refusing to coordinate the donation of a kidney to him by his brother, who was also incarcerated within the DOCCS system. Presently before this Court is Defendants' Motion for Summary Judgment. (Docket No. 54.) Despite being warned of the consequences of his failure to do so, Plaintiff has not responded to Defendants' motion. For the following reasons, this case is dismissed for failure to prosecute and Defendants' are granted summary judgment.

## II. BACKGROUND

Because Plaintiff failed to respond to Defendants' motion, all facts set forth in Defendants' Rule 56 Statement are deemed admitted. See Fed. R. Civ. P. 56 (e)(2); Local Rule 56 (a)(2).

Plaintiff was an inmate housed at the Elmira Correctional Facility. (Defendants' Statement of Undisputed Facts ("Defendants' Statement"), Docket No. 52-2, ¶ 1.) Defendant Trabout was an employee of DOCCS. (Id. at ¶ 2.) Defendant Jones was an employee of the Upstate University Hospital. (Id. at ¶ 3.)

At all times relevant (2012-2014), Plaintiff was under the care of the Upstate University Hospital for a kidney transplant evaluation and treatment, and under general medical care at Elmira. (Id. at ¶ 5.) All aspects of Plaintiff's possible kidney transplant were handled by the Upstate University Hospital.[1] (Id. at ¶ 6.) Per hospital policy, the Transplant Surgery Department is not permitted to make initial contact with a potential living donor. (Id. at ¶¶ 7, 33.) Instead, the potential donor must initiate contact with the hospital. (Id.)

---

[1] Defendant Trabout never personally treated Plaintiff between 2012 and 2014 while he was at Elmira, nor was he personally involved in any decisions concerning Plaintiff's transplant candidacy. (Defendants' Statement, ¶¶ 35, 36.)

2

During a transplant evaluation meeting on December 28, 2012, Plaintiff advised hospital staff that he had asked his six siblings to be donors. (Id. at ¶ 10.) Hospital staff instructed Plaintiff to have any interested siblings contact the hospital. (Id.) The hospital did not deem Plaintiff a strong candidate for transplantation because of his history of substance abuse and concern that he would not be compliant with his medications after discharge. (Id. at ¶ 11.) On December 31, 2012, the hospital notified Plaintiff that he would not be placed on the active transplant waiting list. (Id. at ¶ 12.)

On March 25, 2013, after Plaintiff had inquired, Defendant Jones contacted Elmira medical staff and requested that they relay information to Plaintiff that she provided concerning the live donor process. (Id. at ¶ 13.)

On November 22, 2013, Plaintiff informed hospital staff that his brother housed at the Attica Correctional Facility was interested in donating a kidney to him. (Id. at ¶ 15.) Hospital staff again instructed Plaintiff to have his brother contact the hospital directly. (Id.) Plaintiff, however, never instructed his brother to contact the hospital, nor did his brother ever contact the hospital to inquire about serving as a live donor. (Id. at ¶¶ 31, 31.)

On April 14, 2014, upon continuing evaluation, the hospital determined that Plaintiff should be placed on the active transplant waiting list. (Id. at ¶ 16.) It notified Plaintiff of this change in status on April 16, 2014. (Id. at ¶ 17.) Plaintiff remained on the active list until February 7, 2015, when he successfully underwent transplant surgery using a cadaver donor. (Id. at ¶¶ 18-24.)

On August 5, 2016, Plaintiff was admitted to Upstate hospital for kidney rejection therapy due to acute kidney injury, which medical records indicated occurred because Plaintiff was not compliant with his medication following his release from prison. (Id. at ¶¶ 25, 27-28.) In short, Plaintiff's body was rejecting the cadaver kidney.

On December 16, 2016, Plaintiff was admitted to Upstate hospital in critical medical condition with life-threatening medical problems, yet he refused treatment and left the hospital against medical advice. (Id. at ¶ 26.) Two months later, on February 6, 2017, Plaintiff again presented at Upstate hospital with pain over his transplant site and requested that the rejected kidney be removed, which it was on February 9, 2017. (Id. at 30.)

Plaintiff never filed a grievance regarding Defendants' handling of his kidney transplant or their failure to contact his brother about serving as a live donor. (Id. at ¶ 37.)

Plaintiff initiated this action in the Northern District of New York on May 31, 2013. (Docket No. 1.) The Northern District severed Plaintiff's present claims and transferred them here. (Docket No. 11.) Plaintiff filed his amended complaint in this district on April 30, 2014. (Docket No. 13.) After a period of discovery, Defendants filed their instant Motion for Summary Judgment on September 21, 2017, seeking dismissal of Plaintiff's complaint for (1) failure to exhaust administrative remedies, (2) failure to establish Defendant Trabout's personal involvement in the alleged constitutional deprivation, and (3) failure to establish that Defendant Jones was deliberately indifferent to a serious medical need.[2] (Docket No. 54.)

---

[2] Because it is undisputed that Plaintiff failed to exhaust his administrative remedies as required, this Court need not address Defendants' other arguments. This Court notes, however, that its review of the record

4

## III. DISCUSSION

A. **Dismissal for Failure to Prosecute**

Despite numerous opportunities to do so, Plaintiff has not responded to Defendants' motion, nor has he submitted evidentiary support for his claims. This case therefore warrants dismissal for failure to prosecute, under Rule 41 (b) of the Federal Rules of Civil Procedure, which provides that

> [i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

Fed. R. Civ. P. 41 (b).

Where the defendant has not moved under Rule 41 (b), a court may nonetheless dismiss a case *sua sponte*. Link v. Wabash R.R. Co., 370 U.S. 626, 630-31, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1982); Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 42 (2d Cir. 1982). In Link, the Supreme Court noted that "[t]he authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link, 370 U.S. at 630-31.

Rule 41 (b) does not define what constitutes failure to prosecute. But the Second Circuit has stated that failure to prosecute "can evidence itself either in an action lying

---

reveals no evidence that Defendant Trabout was personally involved in any alleged constitutional deprivation or that Defendant Jones was deliberately indifferent to Plaintiff's serious medical needs.

5

dormant with no significant activity to move it or in a pattern of dilatory tactics." Lyell Theatre Corp., 682 F.2d at 42. Dismissal pursuant to Rule 41 (b) falls within the court's discretion. See id. at 42-43 ("the scope of review of an order of dismissal is confined solely to whether the trial court has exercised its inherent power to manage its affairs within the permissible range of its discretion"). It is, however, "a harsh remedy to be utilized only in extreme situations." Harding v. Fed. Reserve Bank, 707 F.2d 46, 50 (2d Cir. 1983) (quoting Theilmann v. Rutland Hosp., Inc., 455 F.2d 853, 855 (2d Cir. 1972) (per curiam)); see also Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 665 (2d Cir. 1980) (discussing the sanction of dismissal for failure to prosecute as "pungent, rarely used, and conclusive"). This is particularly true in cases involving *pro se* litigants, where dismissal for failure to prosecute should be granted only "when the circumstances are sufficiently extreme." Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996) (citing Nita v. Connecticut Dep't of Envtl. Prot., 16 F.3d 482, 487 (2d Cir. 1994)).

The following factors, none of which is dispositive, must be considered in determining whether dismissal for failure to prosecute is warranted: (1) the duration of the plaintiff's failures, (2) whether the plaintiff received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) whether an appropriate balance has been struck between alleviating the court's calendar congestion and protecting the litigants' due process rights, and (5) whether lesser sanctions would be appropriate. See United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 255 (2d Cir. 2004); Nita, 16 F.3d at 485; Feurtado v. City of New York, 225 F.R.D. 474, 477 (S.D.N.Y. 2004) (quoting Jackson v. City of New York, 22 F.3d 71, 74 (2d Cir. 1994)). While a district court is not required to expressly discuss these factors

on the record, "a decision to dismiss stands a better chance on appeal if the appellate court has the benefit of the district court's reasoning." Lucas, 84 F.3d at 535. Finally, in examining the above factors, no single factor is to be considered dispositive. See United States ex rel. Drake, 375 F.3d at 254.

In the present case, these factors weigh in favor of dismissal. Specifically, (1) Plaintiff has caused a delay of significant duration in this litigation, as the proceedings have been halted for approximately seven months as a result of his inaction, see Ruzsa v. Rubenstein & Sendy Attys at Law, 520 F.3d 176, 177 (2d Cir. 2008) (upholding dismissal where pro se party caused seven-month delay); (2) this Court thrice directed Plaintiff to respond to Defendants' motion and twice warned him that his failure to respond could result in dismissal of this case (Docket Nos. 59, 60); (3) Defendants are inherently prejudiced by further delay of this action; (4) by affording Plaintiff ample time to prosecute his claims, this Court carefully balanced the need to alleviate court calendar congestion against Plaintiff's right to pursue his claims; and (5) no lesser sanction would be appropriate as Plaintiff's repeated failure to comply with this Court's multiple warnings of the possibility of dismissal demonstrate that lesser sanctions would be ineffective, see Ruzsa, 520 F.3d at 178 (holding that "it is . . . unclear that a 'lesser sanction' would have proved effective" in light of plaintiff's failure to respond to district court's notice). From these facts, this Court finds that Plaintiff had ample opportunity to pursue his claims, but elected not to do so. Dismissal for failure to prosecute is therefore warranted. Nonetheless, this Court addresses Defendants' motion on the merits.

**B.     Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998).  That is, there must be evidence

from which the jury could reasonably find for the nonmoving party. Anderson, 477 U.S. at 252.

By rule, judgment may also be entered against a party that fails to respond to a properly filed motion for summary judgment, if appropriate. Fed. R. Civ. P. 56 (e)(3). This district's Local Rules provide for similar relief: a nonmoving party's failure to file and serve an answering memorandum or affidavit may constitute grounds for resolving the motion against it. See Local Rule 7 (a)(2)(A) and (a)(3).

But failure to oppose or respond to a motion for summary judgment standing alone does not warrant granting the motion: "the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." See Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244, 246 (2d Cir. 2004) ("failure to respond to [a Rule 56] motion does not alone discharge the burdens imposed on a moving party"); Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001). If the moving party fails to submit evidence sufficient to meet its burden, "summary judgment must be denied even if no opposing evidentiary matter is presented." Amaker, 274 F.3d at 681. Consequently, the Second Circuit has emphasized that district courts "'in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'" Vt. Teddy Bear, 373 F.3d at 246 (quoting Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993)).

**C.    42 U.S.C. § 1983**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting

under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. See Graham v. Connor, 490 U.S. 386, 393-94,109 S. Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)). Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged. See Baker, 443 U.S. at 140. Here, Plaintiff's claims are grounded in the Eighth Amendment.

Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983. See Haygood v. City of New York, 64 F. Supp. 2d 275, 280 (S.D.N.Y. 1999). It is well settled in this circuit that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983. See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977); Richardson v. Coughlin, 101 F. Supp. 2d 127, 129 (W.D.N.Y. 2000); Pritchett v. Artuz, No. 99 Civ. 3957 (SAS), 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000).

The Second Circuit construes personal involvement in this context to mean "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Personal involvement need not be active participation. It can be found "when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference

by failing to act." See Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989). Thus, personal involvement can be established by showing that

> (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicating that constitutional acts were occurring.

Liner v. Goord, 582 F. Supp. 2d 431, 433 (W.D.N.Y. 2008) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003).

As noted, there is no evidence from which it could be concluded that Defendant Trabout was personally involved in any constitutional deprivation. Defendant Trabout never personally treated Plaintiff between 2012 and 2014, now was he personally involved in any decisions concerning Plaintiff's transplant services. (Defendants' Statement, ¶¶ 35, 36.) Moreover, during his deposition, Plaintiff could not identify how Defendant Trabout was personally involved in the deprivation of his constitutional rights and instead conceded that Defendant Trabout's name was simply one that he remembered. (Declaration of Denetra D. Roberts ("Roberts Decl."), Docket No. 52-7, Exhibit E, p. 40.) Defendant Trabout must therefore be dismissed for lack of personal involvement.

**D.      Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.A. § 1997e(a).  The Supreme Court has made clear that exhaustion of remedies is mandatory under the PLRA.  See Jones v. Bock, 549 U.S. 199, 211, 127 S. Ct. 910, 918-19, 166 L. Ed. 2d 798 (2010) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") (citing Porter v. Nussle, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L.Ed.2d 12 (2002)); Woodford v. Ngo, 548 U.S. 81, 85, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citing Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L.Ed.2d 958 (2001)).  Moreover, the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter, 534 U.S. at 516.

"A court may not dismiss for failure to exhaust administrative remedies unless . . . [it] determines that such remedies are available."  Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004).  A plaintiff prison inmate must "exhaust all 'available' administrative remedies, not just those that meet federal standards . . . ."  Woodford, 548 U.S. at 85.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedures . . . ."  Id. at 90.

To determine whether an administrative remedy is available, courts "should be careful to look at the applicable set of grievance procedures, whether city, state or federal." Abney, 380 F.3d at 663 (quoting Mojas v. Johnson, 351 F.3d 606, 610 (2d Cir. 2003)). "To be 'available' under the PLRA, a remedy must afford 'the possibility of some relief for the action complained of.'" Abney, 380 F.3d at 667 (quoting Booth, 532 U.S. at 738). Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements. See Snider v. Melindez, 199 F.3d 108, 114 (2d Cir. 1999).

A plaintiff prison inmate is "not required to specially plead or demonstrate exhaustion in [his complaint]," but rather, the failure to exhaust administrative remedies must be raised as an affirmative defense. Bock, 549 U.S. at 216. Because failure to exhaust is an affirmative defense, Giano v. Goord, 380 F.3d 670, 675 (2d Cir. 2004), defendants bear the initial burden of establishing, by pointing to "legally sufficient source[s]" such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute. Mojias, 351 F.3d at 610; see also Snider, 199 F.3d at 114.

If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors rendered a nominally available procedure unavailable as a matter of fact. See Hemphill v. New York, 380 F.3d at 680, 687–88 (2d Cir. 2004). The Second Circuit has recognized that while the exhaustion requirement is mandatory, three exceptions exist: a prisoner's failure to comply with the exhaustion requirement is justified "when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to

exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006).

As an initial matter, Defendants have identified specific statutory regulations showing that administrative remedies were available to Plaintiff at the time the events transpired. Pursuant to N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5, an inmate must comply with the following procedures:

> First, the prisoner files a grievance with the Inmate Grievance Resolution Committee. Second, the prisoner may appeal an adverse IGRC decision to the facility superintendent, and third, the prisoner may appeal an adverse decision by the superintendent to the Central Office Review Committee.

Bennett v. Wesley, No. 11 CIV. 8715 JMF, 2013 WL 1798001, at *4 (S.D.N.Y. Apr. 29, 2013) (internal citations omitted). Thus, "[a] prisoner incarcerated by DOC[C]S must exhaust all of the steps of the Inmate Grievance Resolution Program ('IGRP') before bringing an action in [ ] Court." Id.; see also Dabney v. Pegano, 604 F. App'x 1, 4 (2d Cir. 2015) ("[F]ailure to comply with the [Internal Grievance Program's] requirement that prisoners appeal their grievances to the [Central Office Review Committee] means that he did not properly exhaust his administrative remedies."); Omaro v. Annucci, 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) ("It is well-established that an inmate who does not appeal to CORC has failed to exhaust his administrative remedies.") Accordingly, Defendants have demonstrated the availability of N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5, a legally sufficient source supplying a mandatory grievance process.

Defendants have also conclusively established that Plaintiff did not file a grievance or otherwise exhaust his administrative remedies, and Plaintiff concedes as much.

Defendants have submitted the declaration of Misty Odell, who is the Inmate Grievance Program ("IGP") supervisor at Elmira. (Declaration of Misty Odell ("Odell Decl."), Docket No. 52-5, ¶ 1.) Odell relates that her search of the records maintained by the Central Office Review Committee ("CORC"), which maintains files of grievances and appeals heard and decided by the CORC since 1990, revealed no record of any grievance filed by Plaintiff while he was at Elmira between 2012 and 2014. (Odell Decl. ¶¶ 7-8.) Rather, Plaintiff filed only one grievance while at Elmira, in 2015, and it was unrelated to his kidney transplant. (Id. at ¶ 9.) There is no record whatsoever of Plaintiff ever having filed a grievance related to his kidney transplant. (Id. at ¶ 11.)

This is consistent with Plaintiff's deposition in this case, during which he admitted that he did not file a grievance concerning his kidney transplant because "it's not easy writing a grievance and just kind of handing, you know, if you get the letter and write a grievance, you know, you put it into the box, it just disappears." (Roberts Decl., Exhibit E, pp. 51-52.) Plaintiff definitively testified that he neither attempted to nor filed a grievance concerning his kidney transplant, which is fatal to his claims. (Id.)

In the face of this evidence, Plaintiff fails to demonstrate that he either exhausted his administrative remedies or was in some way prevented from doing so. Consequently, Plaintiff's complaint must be dismissed for failure to exhaust administrative remedies. See Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.")

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's case is dismissed for failure to prosecute, and Defendants' Motion for Summary Judgment is granted.

## V. ORDERS

IT HEREBY IS ORDERED, that Plaintiff's case is DISMISSED for failure to prosecute, pursuant to Rule 41 (b) of the Federal Rules of Civil Procedure.

FURTHER, that Defendants' Motion for Summary Judgment (Docket No. 54) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: April 9, 2018
Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge